UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GUY G. GEBHARDT, | ) | |
| ACTING UNITED STATES TRUSTEE, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | MISCELLANEOUS |
| | ) | PROCEEDING |
| vs. | ) | NO. 16–00504 –LRC |
| | ) | |
| CHARLES M. LANGEVIN, JR., | ) | |
| | ) | |
| DEFENDANT. | ) | |

## UNITED STATES TRUSTEE'S RESPONSE
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Guy G. Gebhardt, the Acting United States Trustee for Region 21 ("United States Trustee") and the plaintiff in this proceeding, responds to the motion for summary judgment filed by the defendant, Charles M. Langevin Jr.  Dkt. No. 10.

## SUMMARY OF ARGUMENT AND RESPONSE

### 1.

Mr. Langevin contends that he is entitled to summary judgment because **(1)** the United States Trustee's Amended Complaint fails to establish that he provided "legal advice," **(2)** the Amended Complaint fails to provide any examples of conduct that is unfair or deceptive, **(3)** 11 U.S.C. 110(e)(2)(A), which prohibits petition preparers from offering "legal advice," violates the First Amendment, and

(**4**) 11 U.S.C. 110(f), which prohibits petition preparers from using the word "legal" in their advertisements, violates the First Amendment.[1]  Dkt. 10, pp. 7, 12.

**2.**

As will be explained in more detail below, Mr. Langevin's motion for summary judgment should be denied.  At this point, no discovery has been conducted.  For this reason, the motion is premature.  Further, contrary to Mr. Langevin's arguments, the allegations in the Amended Complaint, which are conceded for purposes of the motion, establish numerous causes of action under section 110.  Among other things, the conceded factual assertions from the Amended Complaint adequately allege that Mr. Langevin violated the statute by consistently using the word "legal" on his websites and advertisements, indicating that he provides legal representation in bankruptcy proceedings, and stating that he provides services that are comparable to higher priced law firms.   Mr. Langevin's constitutional arguments are without merit because section 110 does not implicate the First Amendment but, even if it did, the subsections at issue are permissible regulations of commercial speech.

**STANDARD OF REVIEW**

**3.**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there are no disputed issues of material fact and the moving party is entitled to a

---

[1] Mr. Langevin also argues that to the extent he is accused of violating OCGA 15-19-50, the statute is unconstitutional.  OCGA 15-19-50 and 15-19-51 prohibit a non-attorney from practicing law in Georgia by, among other things, giving "legal advice."  However, the Amended Complaint seeks relief under sections 110 for conduct that is specifically prohibited by section 110.

2

judgment as a matter of law.  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056 (making Rule 56 applicable in adversary proceedings in bankruptcy).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

## STATUTORY FRAMEWORK

### 4.

Section 110 of the Bankruptcy Code establishes restrictions and imposes requirements on bankruptcy petition preparers[2] and sets forth statutory remedies for violations of the section.  As applicable to this case, section 110(e) provides that a "bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice, including… advising the debtor— (i) whether— (I) to file a petition under this title; or (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate; (ii) whether the debtor's debts will be discharged in a case under this title;…  [and] (vii) concerning bankruptcy procedures and rights."  Section 110(f) prohibits bankruptcy petition preparers from using the word "legal" in advertisements.  Sections 110(i) and (j) provide that the court may sanction a petition preparer if he commits "fraudulent, unfair, or deceptive" acts.

---

[2] Mr. Langevin does not dispute that he is a bankruptcy petition preparer.

## AMENDED COMPLAINT AND UNDISPUTED FACTS[3]

### 5.

The United States Trustee initiated this miscellaneous proceeding on September 2, 2016, by filing a complaint against Mr. Langevin.  Dkt. No. 1. The United States Trustee amended his complaint on October 24, 2016.  Dkt. No. 2.

### 6.

The Amended Complaint alleges, among other things, that:

A. "Mr. Langevin uses the word 'legal' on [his] 249 Website, in violation of 11 U.S.C. 110(f)," Dkt. 2, p. 9;

B. "Mr. Langevin offers legal advice on the 249 Website," *id.* at 10;

C. "Mr. Langevin's 249 Website contains unfair and deceptive information," *id.* at 11;

D. "Mr. Langevin offers legal advice on the Simplified Document Solutions Website," *id.* at 12;

E. "The Simplified Document Solutions Website contains unfair and deceptive information," *id.*;

F. "Mr. Langevin's blog contains legal advice and includes unfair and deceptive information," *id.* at 14;

G. Mr. Langevin's "Yelp Advertisement for Simplified Document Solutions contains unfair and deceptive information," *id.* at 16;

---

[3] This section of the United States Trustee's response is intended as a synopsis of his Amended Complaint and not a complete statement or discussion of the United States Trustee's allegations and contentions.  In accordance with Fed. R. Civ. P. 15(b) and Fed. R. Bankr. P. 7015, the United States Trustee reserves the right to amend the pleadings.

H. Mr. Langevin's "Groupon Advertisement for Simplified Document Solutions contains unfair and deceptive information," *id.* at 17;

I. Mr. Langevin's "Yellow Page Advertisement for Simplified Document Solutions contains unfair and deceptive information," *id.* at 18; and

J. Mr. Langevin's "Angie's List Advertisement for Simplified Document Solutions contains unfair and deceptive information," *id.* at 19.

**7.**

The Amended Complaint includes factual assertions in support of these allegations. Mr. Langevin acknowledges that for purposes of his motion for summary judgment, those assertions are accepted as true. Dkt. No. 10, p. 17. The Amended Complaint asserts, among other things, that:

A. The 249 Website states that "[w]e provide a debtor with all of the documents necessary to obtain immediate bankruptcy protection. Both chapters of bankruptcy will stop foreclosure, repossession, wage garnishment, lawsuits, creditor harassment, evictions, and any other attempts to collect debts." Dkt. 2, p. 10.

B. The 249 Website states that "[w]e provide highly effective services that deliver outstanding results at the fraction of the cost law firms and attorneys charge their clients for similar services. We listen to your situation and want you to know that we're here to help make things better and lighter. Unlike many lawyers, we are not here to take advantage of your situation. You can always expect fair and honest service at very affordable rates." *Id.* at 11.

C. The Simplified Document Solutions Website states that "Simplified Document Solutions can provide you with all of the necessary

5

paperwork for you to obtain a discharge and move on with your life for only $249.00." *Id.* at 12.

D. "Simplified Document Solutions Website contains unfair and deceptive information including, for example, the information about Mr. Langevin's experience as a paralegal and his 'love for the law.'" *Id.* at 12-13.

E. Mr. Langevin's blog provides that "the best…option is to hire an experienced bankruptcy paralegal, or petition preparer. The bankruptcy code permits non-attorneys to assist pro-se individuals pursuant to 11 U.S.C. 110." *Id.* at 14.

F. The blog provides that "Chapter 7 bankruptcy generally only lasts 3-4 months and has almost a 100% success rate. Generally, all a debtor has to do is file the appropriate paperwork (professionally prepared by Simplified Document Solutions or a competitor), go to a quick hearing to verify the identity of the person and verify the paperwork, and wait for the discharge." *Id.* at 16.

G. The blog suggests that "(i)f you generally get large tax refunds, it might make sense to wait to file your taxes until after you have received and spent most or all of the tax refund." *Id.* at 15-16.

H. Mr. Langevin's Yelp Advertisement provides that "[o]ur success rate is better than most of the bankruptcy attorneys and paralegals in Atlanta and we are happy to give you a free comparison right from the Bankruptcy Court's website. Our bankruptcy program is better than credit repair and cheaper than the lowest priced bankruptcy attorney.… Charles has successfully handled literally tens of thousands of cases and helped people obtain relief from millions of dollars in crushing debt." *Id.* at 16-17.

I.  Mr. Langevin's Groupon advertisement provides that "Simplified Document Solutions gives our valued customers 1-on-1 support for a fraction of the price of our competitors." *Id.* at 17.

J.  The "categories under which Simplified Document Solution's Yellow Page advertisement appears are: Bankruptcy Law Attorneys, Bankruptcy Services, Tax Return Preparation, Paralegals." *Id.* at 18.

K.  The Yellow Page advertisement provides that "Simplified Document Solutions offers the best, most affordable bankruptcy service in the metro Atlanta area." *Id.* at 18-19.

L.  The "heading for the Angie's List Advertisement is "Simplified Document Solutions - $249 Bankruptcy." *Id.* at 19.

M. "On the Simplified Document Solutions website, Mr. Langevin invites prospective assisted persons to "Click Here to Compare our Success to our 3 Biggest Attorney Competitors." *Id.* at 20.

**8.**

In his Amended Complaint, the United States Trustee requests the Court:

A.  find that Mr. Langevin violated section 110(e)(2), *id.* at 20;

B.  enjoin Mr. Langevin from violating section 110(e)(2), *id.* at 21;

C.  find that Mr. Langevin violated section 110(f), *id.* at 20;

D.  enjoin Mr. Langevin from violating section 110(f), *id.* at 21;

E.  find that Mr. Langevin engaged in unfair, deceptive, or fraudulent conduct, *id.* at 20; and

F.  enjoin Mr. Langevin from engaging in unfair, deceptive, and fraudulent conduct. *Id.* at 21.

## ARGUMENT

### I.    The motion for summary judgment is premature.

#### 9.

Mr. Langevin has moved for summary judgment.  AP Dkt. No. 10.
However, at this point in the case, no discovery has been conducted.  It is well
established that a motion for summary judgment should generally not be granted
prior to discovery.  *See, e.g. Snook v. Trust Co. of Georgia Bank of Savannah,
N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) (stating that "[t]his court has often noted
that summary judgment should not be granted until the party opposing the motion
has had an adequate opportunity for discovery.")  Discovery in this case may
uncover additional facts in support of the United States Trustee's claims as well as
cast doubt on Mr. Langevin's defenses.  For example, the United States Trustee
may discover witnesses who will testify that they were misled by Mr. Langevin or
that Mr. Langevin provided them legal advice.  Therefore, the motion is premature
and should be denied.

### II.    The motion is not supported by admissible evidence.

#### 10.

In moving for summary judgment, Mr. Langevin makes various factual
assertions, such as contending that no reasonable person believes that he is
providing legal services.  AP Dkt. No. 10, p. 10.  However, he offers no
declarations, affidavits, deposition transcripts, or other admissible evidence to
support his assertions.  Because Mr. Langevin has not properly supported his
motion for summary judgment with admissible evidence, the Court should deny

the motion.[4]   *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)
(providing that inadmissible evidence cannot be considered in ruling on a motion
for summary judgment).

### III.   The Amended Complaint establishes three valid causes of action.

### 11.

Mr. Langevin concedes the factual allegations contained in the Amended
Complaint for purposes of ruling on his motion for summary judgment.[5]  Dkt. 10,
p. 17.  But he argues that he is entitled to summary judgment because the facts as
alleged in the Amended Complaint do not establish violations of section 110.  Dkt.
10, pp. 6-11.  He is wrong.  The Amended Complaint adequately pleads causes of
action under three separate sections of the statute.

### 12.

First, section 110(e) provides that a "bankruptcy petition preparer may not
offer a potential bankruptcy debtor any legal advice, including… advising the
debtor… whether the debtor's debts will be discharged in a case under this title;…
[or] concerning bankruptcy procedures and rights."

### 13.

Here, the conceded factual allegations from the Amended Complaint contain
numerous examples of conduct by Mr. Langevin that violate section 110(e).  To
consider a few, the Amended Complaint alleges that Mr. Langevin's 249 Website

---

[4] At a minimum, this Court should not credit any of the factual assertions contained
in the motion for summary judgment because they are not supported by admissible
evidence.

[5] Because Mr. Langevin concedes that for purposes of this motion, he committed
the acts he is accused of in the Amended Complaint, no separate statement of
disputed facts is attached to this response.  *See* BLR 7056-1.

states that "[w]e provide a debtor with all of the documents necessary to obtain immediate bankruptcy protection.  Both chapters of bankruptcy will stop foreclosure, repossession, wage garnishment, lawsuits, creditor harassment, evictions, and any other attempts to collect debts."[6]  Dkt. 2, p. 10.  In addition, the Amended Complaint alleges that Mr. Langevin's blog provides that a "Chapter 7 bankruptcy generally only lasts 3-4 months and has almost a 100% success rate. Generally, all a debtor has to do is file the appropriate paperwork (professionally prepared by Simplified Document Solutions or a competitor), go to a quick hearing to verify the identity of the person and verify the paperwork, and wait for the discharge."  *Id.* at 16.

## 14.

These statements, which for purposes of the motion Mr. Langevin concedes were made, violate section 110(e) because they make assertions regarding the legal effect of filing for bankruptcy relief and also provide advice regarding the bankruptcy process.  *See In re Bernales*, 345 B.R. 206, 225-26 (Bankr. C.D. Cal 2006) (finding that BPP's website which provided generic information regarding dischargability and other issues violated section 110); *U.S. Trustee v. Burton (In re Rosario)*, 493 B.R. 292, 337 (Bankr. D. Mass. 2013) (discussing cases which have held that actions such as "[e]xplaining bankruptcy remedies and procedures," "[d]escribing the benefits or effects of bankruptcy laws," [d]efining, explaining, or interpreting legal terms," and "[s]ummarizing bankruptcy laws and processes" constitute giving legal advice).

## 15.

Second, sections 110(i) and (j) of the Bankruptcy Code prohibit bankruptcy petition preparers from committing fraudulent, unfair, or deceptive acts.

---

[6] The website was viewed on September 2, 2016.

**16.**

The conceded factual assertions in the Amended Complaint adequately allege that Mr. Langevin engaged in unfair or deceptive acts by, among other things, implying that he could provide legal services.  For example, the Amended Complaint alleges that the 249 Website states that "[w]e provide highly effective services that deliver outstanding results at the fraction of the cost law firms and attorneys charge their clients for similar services."  Dkt. 2, p. 11.  Similarly, the Amended Complaint alleges that Mr. Langevin's Yelp Advertisement provides that "[o]ur success rate is better than most of the bankruptcy attorneys and paralegals in Atlanta and we are happy to give you a free comparison right from the Bankruptcy Court's website. Our bankruptcy program is better than credit repair and cheaper than the lowest priced bankruptcy attorney.…  Charles has successfully handled literally tens of thousands of cases and helped people obtain relief from millions of dollars in crushing debt."  *Id.* at 16-17.

**17.**

These conceded allegations support the Acting United States Trustee's contention that Mr. Langevin violated sections 110(i) and (j).  When the statements are read together or in isolation, they are fraudulent, unfair, and deceptive because they give the impression that Mr. Langevin is an attorney or is able to render legal advice or provide legal services.  *See Turner v. Burnworth (In re Carrier)*, 363 B.R. 247, 257 (M.D. Fla. 2006) (providing that the "Defendants have committed fraudulent, unfair or deceptive acts prohibited by § 110(i) and 110(j) (and also prohibited under § 110(k)) by holding themselves out to the community as providing 'legal' services."); *In re Bush*, 275 B.R. 69, 82-83 (Bankr. D. Idaho 2002) (holding that BPP committed fraudulent, unfair, or deceptive act by "send[ing] an unmistakable message to the customer regarding his legal acumen and ability, and the benefits to be obtained from utilizing his services.").

**18.**

Third, the Amended Complaint also adequately alleges that Mr. Langevin's websites consistently use the word "legal" and similar terms in violation of section 110(f), which prohibits bankruptcy petition preparers from using the word "legal" in any advertisements.

**19.**

The Amended Complaint alleges that the Simplified Document Solutions Website includes the word "legal" in its banner and contains information about Mr. Langevin's experience as a paralegal and his "love for the law."[7]  Dkt. 2, pp. 9 and 12-13.  Along the same lines, the Amended Complaint alleges that Mr. Langevin's blog provides that "the best…option is to hire an experienced bankruptcy paralegal, or petition preparer."  *Id.* at 14.  These statements violate section 110(f) by using the word "legal" or similar terms.  *See Strickland v. U.S. Trustee (In re Wojcik)*, 560 B.R. 763, 770 (B.A.P. 9th Cir. 2016) (holding that "the plain language of § 110(f) prohibits any use of the word 'legal' in an advertisement by a non-attorney BPP, including the word 'paralegal.'"); *In re Hobbs*, 213 B.R. 207, 215 (Bankr. D. Me. 1997) (holding that term "paralegal" fosters consumer confusion and, thus, violates section 110(f)).

**20.**

Accordingly, the allegations in the Amended Complaint, which are conceded for purposes of the motion, establish causes of action under three different parts of section 110.[8]   Therefore, to the extent Mr. Langevin argues that he is entitled to

---

[7] The website was viewed on September 2, 2016.

[8] The arguments made in this section are not exhaustive regarding the claims asserted against Mr. Langevin.  Rather, they are intended to be illustrative and establish that the Amended Complaint states numerous valid causes of action against Mr. Langevin.

summary judgment because the Amended Complaint does not plead violations of section 110, his motion should be denied.

## IV.    Mr. Langevin's First Amendment arguments lack merit.

### 21.

Mr. Langevin also argues that he entitled to summary judgment on two of the three counts because 11 U.S.C. 110(e)(2)(A), which prohibits BPPs from offering legal advice, and 11 U.S.C. 110(f), which prohibits BPPs from using the word legal in advertisements, violate the First Amendment.  Dkt. 10, p. 12.  There is no merit to these arguments.

### 22.

Mr. Langevin argues that sections 110(e)(2)(A) and (f) are unconstitutional on their face.  Dkt. 10, p. 12 (stating that sections 110(e)(2)(A) and (f) are unconstitutional "both facially and applied.").  A facial challenge is the most difficult type of challenge to succeed on.  *United States v. Salerno*, 481 U.S. 739, 745 (1987) (stating that a "facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully").  "To succeed on his facial challenge," Mr. Langevin must show that the provisions are "unconstitutional in all of [their] applications."  *Wright v. City of St. Petersburg*, 833 F.3d 1291, 1295 (11th Cir. 2016).  Mr. Langevin cannot establish that sections 110(e)(2)(A) and (f) are unconstitutional in all of their applications because these provisions are aimed at regulating professional behavior, not speech, and so do not implicate the First Amendment.

### 23.

It is well established that the government has an interest in regulating professional relationships.  *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460

(1978) (stating that "the State bears a special responsibility for maintaining standards among members of the licensed professions."). As a result, the Eleventh Circuit has held that when the government enacts general "provisions limiting the class of persons who may practice the profession, it cannot be said to have enacted a limitation on freedom of speech ... subject to First Amendment scrutiny." *Locke v. Shore*, 634 F.3d 1185, 1191 (11th Cir. 2011). Rather, such regulations are valid so long as they have "a rational connection with the applicant's fitness or capacity to practice the profession." *National Ass'n for the Advancement of Multijurisdiction Practice v. Castille*, 799 F.3d 216, 221 (3d Cir. 2015).

## 24.

Here, sections 110(e)(2)(A) and (f) unsurprisingly limit the practice of bankruptcy law to licensed attorneys and prohibit non-attorneys from using language in their advertisements that imply that they provide legal services. Sections 110(e)(2)(A) and (f) do this by prohibiting petition preparers, who necessarily are not attorneys,[9] from providing legal advice or using the word legal in advertisements.

## 25.

The prohibition against the unlicensed practice of law is universal. *Ohralik*, 436 U.S. at 460 (providing that the "interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts."). Given this and because the provisions are generally applicable, aimed at occupational conduct, and have a rational connection to protecting debtors in bankruptcy cases, sections 110(e)(2)(A) and (f) do not implicate the First Amendment. *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1429-30 (11th Cir. 1998) (holding that

---

[9] Section 110(a) specifically excludes attorneys from the definition of "bankruptcy petition preparer."

regulations that prohibited suspended or disbarred attorneys from having contact with clients were permissible because they "govern occupational conduct, and not a substantial amount of protected speech."); *Gould v. Florida Bar*, 259 F. App'x 208, 211 (11th Cir. 2007) (holding that person who was not licensed to practice law in the state had no First Amendment right to advertise that they provided "federal administrative law" services).  Therefore, Mr. Langevin cannot succeed on his facial challenge of sections 110(e)(2)(A) and (f).

## 26.

Alternatively, and assuming that the First Amendment is potentially implicated, Mr. Langevin still cannot succeed on his facial challenge.  Section 110 regulates the conduct of petition preparers, who are individuals that are statutorily defined as preparing bankruptcy documents for "compensation."  11 U.S.C. 110(a)(1).  Thus, it regulates "commercial speech," which "is afforded less protection than other forms of protected expression."  *Scott v. U.S. Trustee (In re Doser)*, 412 F.3d 1056, 1063 (9th Cir. 2005) (holding that assuming section 110 regulates speech, it is commercial speech).  "For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading."  *Id.*  Thus, because sections 110(e)(2)(A) and (f) can be applied to prohibit or misleading commercial speech without running afoul of the First Amendment, the provisions at issue are not unconstitutional in all of their application and, so, the facial challenge fails.[10]  *See id.*  (providing "[b]ecause the

---

[10] To the extent Mr. Langevin argues that section 110 is overbroad, the overbreadth doctrine is of no assistance to him because section 110 is a commercial speech regulation.  *See Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 497 (1982) (providing that "the overbreadth doctrine does not apply to commercial speech."); *Jacobs v. The Florida Bar*, 50 F.3d 901, 907 (11th Cir. 1995) (stating that the "Supreme Court has held the overbreadth doctrine inappropriate in commercial speech cases.").

commercial activity must be lawful and not misleading, the State may, without further justification, ban commercial expression that is fraudulent or deceptive.").

**27.**

Mr. Langevin also argues that sections 110(e)(2)(A) and (f)  are unconstitutional as applied to him.  Dkt. 10, p. 12 (stating that sections 110(e)(2)(A) and (f) are unconstitutional "both facially and applied.").  But as explained above, the Amended Complaint includes allegations that establish at least at least a question of fact as to whether Mr. Langevin made statements that violate sections 110(e)(2)(A) and (f).  The same statements underlying these claims could also mislead a reasonable person into believing that Mr. Langevin is an attorney who provides legal services.

**28.**

For example, the Amended Complaint asserts that Mr. Langevin's websites provide information regarding the bankruptcy process, the legal effect of filing for bankruptcy relief, and advise that the best option for debtors is to hire a paralegal like him.  Dkt. 2, pp. 10-20.  These statements could lead someone to believe that Mr. Langevin is an attorney or could provide more services than a BPP can legally offer.  *See In re Rosario*, 493 B.R. at 350 (holding that BPP who referred to his education and experience "'foster[ed] consumer confusion,' and 'could mislead the public into believing [the BPP] can assist the public in legal matters.'").  Therefore, there is minimally a question of fact regarding whether Mr. Langevin's conduct is misleading and, thus, not protected by the First Amendment.  *See In re Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d 781, 793-94 (3rd Cir. 1999) (holding that question of fact over whether speech was misleading meant that defendant's motion for summary judgment on First Amendment claim had to be denied).

**29.**

In any event, even if this case implicated non-false or misleading speech,
section 110 would still be a permissible commercial speech regulation.
Commercial speech regulations addressing non-false or misleading speech are
constitutional if "the regulation directly advances the governmental interest
asserted, and… is not more extensive than is necessary to serve that interest."
*Scott*, 412 F.3d at 1063.

**30.**

As many courts have held, section 110 satisfies these standards. *Scott*, 412
F.3d at 1063 (holding that "assuming § 110 regulates [BPP] Scott's speech, it does
not infringe on her First Amendment rights."); *In re Kaitangian*, 218 B.R. 102, 107
(Bankr. S.D. Cal. 1998) (upholding the section 110 prohibition of using of the
word legal against First Amendment challenge because use of word gives
misleading impression); *Martini v. We the People Forms & Serv. Ctrs. USA (In re
Barcelo)*, 313 B.R. 135, 148 (Bankr. E.D.N.Y. 2004) ("applying the Supreme
Court's test in *Central Hudson*, th[e] Court conclude[d] that Section 110 does not
impermissibly infringe on the Defendants' First Amendment rights."); *Gould v.
Clippard*, 340 B.R. 861, 884 (M.D. Tenn. 2006) (rejecting First Amendment
challenge to section 110 because BPP's unfair practices were not constitutionally
protected); *McDow v. We the People Forms & Serv. Ctrs. (In re Douglas)*, 304
B.R. 223, 237-39 (Bankr. D. Md. 2003) (rejecting First Amendment argument
because "the defendants have no constitutional right under the First Amendment or
otherwise to render legal advice without a license.").

**31.**

Specifically, the government has a substantial interest in protecting
consumers of bankruptcy related legal services by regulating BPPs. *In re Barcelo*,
313 B.R. at 147 (providing that "the government has a substantial interest in the

regulation of BPPs, who are not trained in bankruptcy law and who may misguide unsuspecting prospective debtors."). "Section 110 of the Bankruptcy Code was enacted… in order to address the 'growing problem of bankruptcy preparers who abuse the system in the course of preparing documents for debtors to file' in bankruptcy court. At the time the statute was enacted, Congress was acutely aware of the growing popularity of BPPs, and the problems arising from their services. The purpose of enacting Section 110 was 'to police fraud and abuse by ... preparers.'" *Id.* at 141 (citations omitted). Sections 110(e)(2)(A) and (f) directly advance the government's interests by, among other things, protecting consumers from being duped into paying for what they believe are legal services when, in reality, the BPP providing the service is neither trained nor licensed in the law. *Id.* at 148 (providing that "it is clear from the face of the statute that Section 110 directly advances the government's interest in regulating BPPs, in the careful and accurate preparation of bankruptcy petitions and, more generally, the avoidance of fraud and deception on prospective debtors.").

## 32.

Sections 110(e)(2)(A) and (f) are no more extensive than necessary because they are needed to protect consumers from being led into believing that BPPs are qualified to offer legal advice. *See Scott*, 412 F.3d at 1064 (concluding that "[t]he statute directly advances that interest because it specifically prohibits fraudulent and deceptive acts by bankruptcy petition preparers and only in the narrow context of the preparation of bankruptcy petitions."). By contrast, BPPs have no legitimate interest in providing legal advice or using misleading language in their advertisements. *See Borgner v. Brooks*, 284 F.3d 1204, 1210 (11th Cir. 2002) (providing that "state regulations of commercial messages that do not accurately inform the public about lawful activity are valid" and "[i]nherently misleading or false advertising is not considered commercial speech, and may be regulated by the

state at will.").  Mr. Langevin, who challenges the statute, has not shown any
method that would more narrowly target the government's interests.  Therefore,
even insofar as section 110 regulates non-false or misleading speech, it is
constitutional.

**33.**

In arguing that section 110 violates the First Amendment, Mr. Langevin
contends that section 110 is a content based restriction on speech that is subject to
strict scrutiny.  He relies on *Reed v. Town of Gilbert*, *Az.*, __ U.S. __, 135 S. Ct.
2218 (2015).  For numerous reasons, *Reed* has no application to this case.

**34.**

First, *Reed* held that a town's sign ordinance that imposed different
restrictions based on the type of sign at issue was subject to strict scrutiny.  *Id.* at
2224.  *Reed* is of no assistance to Mr. Langevin because professional regulations,
like those imposed by section 110, are not content based restrictions on speech.
Rather, they require everyone, regardless of the content of the advice they want to
provide, to comply with its provisions.  *See National Association for the
Advancement of Multijurisdiction Practice, (NAAMJP) v. Simandle*, 658 F. App'x
127, 136 n. 12 (3d Cir. 2016) (providing that *Reed* did not alter the analysis
regarding content neutrality of attorney licensing requirements).

**35.**

Second, *Reed* involved the regulation of all outdoor signs, including political
signs.  *Reed*, 135 S. Ct. at 2224.  It did not involve strictly commercial speech like
this case.  This is a material difference which distinguishes *Reed*.  *See CTIA-The
Wireless Ass'n v. City of Berkeley*, 139 F. Supp. 3d 1048, 1061 (N.D. Cal. 2015)
(recognizing that the "Supreme Court has clearly made a distinction between
commercial speech and noncommercial speech… and nothing in its recent

opinions, including *Reed*, even comes close to suggesting that that well-established distinction is no longer valid.").

### 36.

Third, unlike this case, *Reed* did not involve misleading speech.  As a result, it did not overrule, expressly or by implication, the case law regarding regulations that deal with this type of speech.  Rather, as recently as 2010, the Supreme Court reiterated the rule that misleading commercial speech is not entitled to First Amendment protection.  *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 250 (2010) (discussing case law that "emphasized that States retain authority to regulate inherently misleading advertisements.").

### 37.

For these reasons, *Reed* is inapplicable and section 110 is not subject to strict scrutiny.[11]

### CONCLUSION

### 38.

This Court should deny the Motion for Summary Judgment.

GUY G. GEBHARDT
ACTING UNITED STATE TRUSTEE, REGION 21

*s/ Jeneane Treace*
R. Jeneane Treace
Trial Attorney
Georgia Bar No. 716620
United States Department of Justice
Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Ted Turner Drive, S.W.
Atlanta, Georgia  30303

---

[11] If the court is inclined to rule that section 110 is subject to strict scrutiny, the United States Trustee should be allowed to create a record establishing that section 110 is narrowly tailored to achieve its purpose.

<u>CERTIFICATE OF SERVICE</u>

I certify that on August 23, 2017, I served a copy of this response upon the defendant by First Class U.S. Mail, addressed as follows.

Charles M. Langevin Jr.
5060 Memorial Drive
Stone Mountain, GA  30083

<span style="margin-left:40%"><i><u>s/ Jeneane Treace</u></i>
R. Jeneane Treace
Trial Attorney
Georgia Bar No. 716620
United States Department of Justice
Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Ted Turner Drive, S.W.
Atlanta, Georgia  30303
(404) 331-4437
<i>jeneane.treace@usdoj.gov</i></span>

21