

**IT IS ORDERED as set forth below:**

**Date: March 29, 2018**

_____

**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | : | MISCELLANEOUS PROCEEDING |
| | : | |
| DANIEL M. MCDERMOTT, Acting | : | No.  16-00504-LRC |
| United States Trustee, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHARLES M. LANGEVIN, | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

Before the Court is the Motion for Summary Judgment, filed by Charles M.

Langevin ("Defendant").  The Motion arises in connection with an amended complaint

(the "Complaint") filed by Guy G. Gebhardt, former Acting United States Trustee and

prosecuted by Daniel M. McDermott, United States Trustee ("Plaintiff").  The Complaint

seeks a finding that Defendant has violated §§ 110(e) & (f) of the Bankruptcy Code and

has "engaged in unfair, deceptive, or fraudulent conduct" and seeks an injunction against

further violations and conduct.  This matter constitutes a core proceeding, over which this

Court has subject matter jurisdiction.  *See* 28 U.S.C. §§ 1334; 157(b)(2)(A); *see also*

*Gould v. Clippard*, 340 B.R. 861, 867 (M.D. Tenn. 2006); *In re Douglas*, 304 B.R. 223,

232 (Bankr. D. Md. 2003); *In re Webb*, 227 B.R. 494, 498 (Bankr. S.D. Ohio 1998).

### FACTS[1] AND PROCEDURAL HISTORY

Defendant, doing business as Simplified Document Solutions, has acted and

continues to act as a "bankruptcy petition preparer" in connection with bankruptcy cases

filed in this Court.  Complaint, ¶¶ 17-18, 20.  Defendant is not a member of the State Bar

of Georgia and is not licensed to practice law in any state.  *Id.* ¶ 16.  Defendant's standard

fee for document preparation is $249.  *Id.*

Defendant maintains two websites:    www.simplifieddocumentsolutions.net  (the

"Simplified Documents Website") and  www.249bankruptcy.com  (the "249 Bankruptcy

Website").  *Id.* ¶¶ 21-22.  Defendant uses the word "legal" on the 249 Website.  *Id.* ¶ 33.

On the 249 Website, Defendant states:

---

[1]  Defendant has not filed a "separate and concise statement of the material facts, numbered separately, as to which
the movant contends no genuine issue exists to be tried," as required by BLR 7056-1.  However, Defendant has
stipulated, for the purposes of this motion only, as to the truth of the facts alleged in the Complaint.  Accordingly,
the Court will consider the merits of the motion, notwithstanding its procedural deficiency.

- "We offer Chapter 7 and Chapter 13 bankruptcy petition preparation for a low fee of only $249.00. We will provide you with all of the documents necessary to obtain immediate bankruptcy protection, stopping lawsuits, foreclosures, wage garnishments, repossessions, creditor harassment and more." *Id*. ¶ 34.

- "Chapter 7 bankruptcy is often referred to as a total bankruptcy or a fresh start bankruptcy. It is the most popular form of bankruptcy because it eliminates most or all debts within a matter of a 3-4 months. At the end of the 3-4 months, a debtor can begin to rebuild his or her credit and will be eligible to obtain credit cards and auto loans almost instantly. Chapter 13 bankruptcy is a debt repayment plan where a debtor makes monthly payments to a court appointed trustee for a period of 3-5 years under a court supervised plan." *Id*. ¶ 35.

- "We provide highly effective services that deliver outstanding results at the fraction of the cost law firms and attorneys charge their clients for similar services. We listen to your situation and want you to know that we're here to help make things better and lighter. Unlike many lawyers, we are not here to take advantage of your situation. You can always expect fair and honest service at very affordable rates." *Id*. ¶ 36.

- "What sets us apart from competition is the fact that we're able to deliver solid results at a fraction of the price of law firms, lawyers, attorneys, and individuals offering the same services we offer." *Id*. ¶ 37.

- "Bankruptcy is a powerful tool that will give you a 'fresh start' financially. The filing of a Bankruptcy petition will immediately stop all collection action, such as foreclosure, repossession, lawsuits, garnishments, and collection calls. The bankruptcy ends with the judge issuing an order that most or all of your debts are permanently discharged and are noncollectable." *Id*. ¶ 39.

- Simplified Document Solutions can provide you with all of the necessary paperwork for you to obtain a discharge and move on with your life for only $249.00. Simplified Document Solutions does not have an attorney on staff. However, since most bankruptcy cases are pretty simple after the

3

petition is properly prepared, most people can handle their case without one." *Id*. ¶ 40.

The Simplified Document Solutions Website contains information about Defendant's experience as a paralegal and his "love for the law." *Id*. ¶ 41. The Simplified Document Solutions Website contains "Helpful Links," such as a link to a paper that lists Georgia bankruptcy exemptions. *Id*. ¶¶ 42-43. On the Simplified Document Solutions website, Defendant invites prospective assisted persons to "Click Here to Compare our Success to our 3 Biggest Attorney Competitors." The linked materials include PACER reports with tallies of "Successful Discharges," "Dismissals," and "Discharges Withheld" in cases in which Defendant prepared documents as compared to cases filed by three law firms: Clark & Washington, Debt Stoppers, and King & King. *Id*. ¶¶ 63-64.

The Simplified Document Solutions Website also has a link to Defendant's blog: http://249bankruptcy.blogspot.com/ (the "Blog"), which includes the following "labels": Bankruptcy, Bankruptcy Attorney, Bankruptcy Paralegal, Chapter 13, Chapter 7, Cheap Bankruptcy, Petition Preparer. *Id*. ¶¶ 44-45. On June 16, 2013, Defendant posted an article titled: "Atlanta debtors are saving thousands using paralegal services." In that article, Defendant stated: "The average attorney in Atlanta is now charging $1500 for even the most simple Chapter 7 bankruptcy petitions, and many are charging in excess of

4

$2500. These same attorneys will hand your file off to a paralegal to do everything. Depending on the attorney you select, you may not even get the chance to meet with the attorney, as everything is done by the paralegal. More and more often, Debtors are choosing to go directly to the paralegal, avoiding the attorney markup." Defendant suggested that, "the best…option is to hire an experienced bankruptcy paralegal, or petition preparer.  The bankruptcy code permits non-attorneys to assist pro-se individuals pursuant to 11 U.S.C. 110."  *Id.* ¶ 47.

On January 30, 2014, Defendant posted an article titled: "What will bankruptcy do to my credit?"  He advised: "These people go into bankruptcy with a very low credit score and they actually see an increase in their credit score, simply because it has nowhere to go but up…When creditors see that you have filed for bankruptcy, they see you as a good credit risk."  *Id.* ¶ 48.

On August 24, 2014, Defendant posted an article titled: "Ten Things that your bankruptcy attorney won't tell you." Defendant declared: "Most bankruptcy petition preparers are current or former bankruptcy paralegals. Because of the scrutiny that petition preparers are subject to, someone that doesn't know what they are doing will quickly be shut down."  Defendant opined that attorneys "will put out untrue information about petition preparers in hopes [they] can convince someone to use an attorney rather than a petition preparer… [or] get judges and U.S. Trustee's to use taxpayer money to

slander my competition and put unreasonable restrictions on petition preparers." *Id.* ¶ 49.

On December 26, 2014, Defendant posted an article titled: "Things You Should Know Before Filing Bankruptcy in the Winter." This article explains that certain credit card charges and cash advances might not be dischargeable. Defendant also suggested that "(i)f you generally get large tax refunds, it might make sense to wait to file your taxes until after you have received and spent most or all of the tax refund." *Id.* ¶ 50.

On July 18, 2015, Defendant posted an article titled "What is the best type of bankruptcy to file?" He discussed the "different types of bankruptcies" and listed various "benefits," "limitations," and "downfalls" of each. Defendant stated: "Chapter 7 bankruptcy generally only lasts 3-4 months and has almost a 100% success rate. Generally, all a debtor has to do is file the appropriate paperwork (professionally prepared by Simplified Document Solutions or a competitor), go to a quick hearing to verify the identity of the person and verify the paperwork, and wait for the discharge." *Id.* ¶ 51.

Defendant posts advertisements on Yelp (the "Yelp Advertisement"), Groupon (the "Groupon Advertisement"), and "Angie's List (the "Angie's List Advertisement"), and advertises in the Yellow Pages (the "Yellow Page Advertisement"). *Id.* ¶¶ 23-26. Defendant also maintains a listing with the Better Business Bureau (the "BBB Listing"). *Id.* ¶ 27.

The Yelp Advertisement for Simplified Document Solutions includes the

6

following statements: "For only $249, you can be debt-free in as little as 3 months through Chapter 7 bankruptcy or restructure your debts over time through Chapter 13 bankruptcy. We can immediately stop wage garnishments, repossessions, creditor harassment, and foreclosure with our same-day bankruptcy filings. Our success rate is better than most of the bankruptcy attorneys and paralegals in Atlanta and we are happy to give you a free comparison right from the Bankruptcy Court's website. Our bankruptcy program is better than credit repair and cheaper than the lowest priced bankruptcy attorney.…[Defendant] has successfully handled literally tens of thousands of cases and helped people obtain relief from millions of dollars in crushing debt." *Id*. ¶ 52.

The Groupon posting features a plaque for "United States Bankruptcy Court." In response to the inquiry "What services does your business offer and what makes your business stand out from the competition," Defendant indicates "Simplified Document Solutions gives our valued customers 1-on-1 support for a fraction of the price of our competitors." The Groupon Advertisement does not disclose that Defendant is a non-attorney BPP. *Id*. ¶ 54. The Groupon Advertisement includes an "In a Nutshell" description of the business, which states that it is: "Affordable Chapter 7 and Chapter 13 Bankruptcy Services with a focus on customer service." *Id*. ¶ 55.

The Yellow Page Advertisement appears under the "categories" Bankruptcy Law Attorneys, Bankruptcy Services, Tax Return Preparation, Paralegals. *Id*. ¶ 58. The

Yellow Page Advertisement advises potential debtors: "Simplified Document Solutions offers the best, most affordable bankruptcy service in the metro Atlanta area. Our $249 flat fee bankruptcy is one of the cheapest bankruptcy options in town. For only $249, we offer assistance with both Chapter 7 and Chapter 13 bankruptcy petitions. You don't have to pay overpriced bankruptcy lawyers thousands of dollars in attorney's fees, Simplified Document Solutions is the best, most experienced, non-attorney [BPP] in town." *Id.*

The Angie's List Advertisement heading for the Angie's List Advertisement is "Simplified Document Solutions - $249 Bankruptcy," and the advertisement alleges that individuals needlessly pay attorneys for "simple documents." *Id.* ¶¶ 60-61. The Angie's List Advertisement does not disclose that Defendant is a non-attorney BPP. *Id.* ¶ 62.

Defendant is aware of at least one instance in which a Chapter 7 debtor believed that Defendant was an attorney. *Id.* ¶ 31. On April 4, 2016, the United States Bankruptcy Court for the Middle District of Georgia entered a Consent Order in which Defendant agreed he would not violate the provisions of 11 U.S.C. § 110(e)(2) in any case in which he acts as a BPP. *In the Matter of Marvin Earl Mitchell*, Case No. 15-40768-JTL, *Gebhardt v. Langevin*, Case No. 15-4020 (Dkt. No. 22). *Id.* ¶ 32.

Although the Complaint was filed on October 24, 2016, an alias summons was issued and served upon Defendant on December 7, 2016, and Defendant's answer was

8

due on January 6, 2017.  Defendant filed his answer to the Complaint on January 6, 2017,

along with a motion to dismiss and the Motion.  Both the motion to dismiss and the

Motion essentially asked the Court to summarily dismiss the Complaint on the basis that

the Complaint fails to state a claim upon which relief can be granted, or that such relief is

unconstitutional.  At the direction of the Court, the parties agreed to a scheduling order,

under which Plaintiff had twenty-one days from the time the Court ruled on the motion to

dismiss to respond to the Motion.  The scheduling order provided that discovery would

not commence until "the date immediately following the Court's entry of the order

disposing of" the Motion.  Doc. No. 20.  The Court denied the motion to dismiss on

August 3, 2017, and Plaintiff responded to the Motion on August 23, 2017.

### CONCLUSIONS OF LAW

Plaintiff seeks a finding that Defendant has violated § 110(e)(2) and § 110(f) of the

Bankruptcy Code and that Defendant has engaged in unfair, deceptive, or fraudulent

conduct.  Plaintiff further asks the Court to enjoin Defendant from further conduct in

violation of § 110(e)(2) and § 110(f) and from further conduct that is unfair, deceptive, or

fraudulent.  Defendant has moved for summary judgment in his favor because: (1) the

Complaint does not allege that Defendant has engaged in speech that would be considered

"legal advice"; (2) the Complaint does not allege that Defendant has engaged in speech

that is unfair or deceptive; and (3) § 110(e), § 110(f), and O.C.G.A. § 15-19-50 are

unconstitutional restrictions on free speech.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).  "The substantive law [applicable to the case] will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248, 251-52, 106 S. Ct. at 2510, 2511-12. The party moving for summary judgment has "the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (citing *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2553).   When, as here, the nonmoving party has the burden of proof at trial, the moving party, ordinarily, may "simply . . . point out to the . . . court – that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 1437.  However, "Rule 56 of the Federal Rules of Civil

Procedure provides for the entry of summary judgment after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case" and courts "generally should not grant summary judgment until the party opposing has had an opportunity to conduct discovery." *Desimoni v. TBC Corp.*, 2016 WL 1572391, at *1–2 (M.D. Fla. Apr. 19, 2016) (citing *Kahama VI, LLC v. HJH, LLC*, 2014 WL 521085, at *3 (M.D. Fla. Feb. 10, 2014); *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988)).  Further, when reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir. 1993).

In this case, Defendant seeks judgment as a matter of law because, even assuming the facts alleged in the Complaint are all true, Defendant's conduct has not violated the statutes at issue and, even if it has, the statutes cannot be enforced because they are unconstitutional.  However, having considered the briefs and the Complaint, the Court finds that, under the peculiar procedural posture of this case and considering the fact that Plaintiff has not been permitted to conduct any discovery, granting summary judgment on any of the counts would be premature.

11

A. <u>Defendant is Not Entitled to Judgment as to the 11 U.S.C. § 110(e) Count</u>

Defendant submits that the Complaint does not allege that Defendant has given "legal advice" within the meaning of § 110(e) and/or O.C.G.A. § 15-19-50. Section 110 of the Bankruptcy Code extensively regulates the conduct of BPPs. Specifically, § 110(e) provides that a BPP "shall not execute any document on behalf of a debtor" and "may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B)." 11 U.S.C. § 110(e). Such proscribed "legal advice includes advising the debtor--(i) whether—(I) to file a petition under this title; or (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate; (ii) whether the debtor's debts will be discharged in a case under this title; (iii) whether the debtor will be able to retain the debtor's home, car, or other property after commencing a case under this title; (iv) concerning--(I) the tax consequences of a case brought under this title; or (II) the dischargeability of tax claims; (v) whether the debtor may or should promise to repay debts to a creditor or enter into a reaffirmation agreement with a creditor to reaffirm a debt; (vi) concerning how to characterize the nature of the debtor's interests in property or the debtor's debts; or (vii) concerning bankruptcy procedures and rights." 11 U.S.C. § 110(e)(2)(B).

Further, courts interpreting § 110(e) have considered it to be "a general prohibition against the practice of law by bankruptcy petition preparers, except where otherwise

permitted by applicable law." *In re Bernales*, 345 B.R. 206, 215 (Bankr. C.D. Cal. 2006).

Accordingly, courts often look to state law to determine whether "'whether the

unauthorized practice of law has occurred in a bankruptcy court.'" *Id*. (quoting In re

Boettcher, 262 B.R. 94 (Bankr. N.D. Cal. 2001).  Section 15-19-50 of the Official Code

of Georgia defines the "practice of law" to include "[t]he giving of any legal advice" and

"[a]ny action taken for others in any matter connected with the law."  O.C.G.A. § 15-19-

51 makes it unlawful for a non-attorney to "render or furnish legal services or advice."

O.C.G.A. § 15-19-51; *see also In re Hutchinson*, 1991 WL 11762770, at *6 (Bankr. S.D.

Ga. Mar. 18, 1991), *reh'g denied and opinion modified*, 1991 WL 11762764 (Bankr. S.D.

Ga. June 19, 1991) (holding that BPP "rendered legal advice in discussing the relative

merits of a Chapter 7 versus Chapter 13 filing, . . . advising [the Debtor] as to how to fill

out the . . . schedules, in making the determination as to the Debtor's . . . exemptions, and

in omitting the Debtor's" from the schedules in violation of O.C.G.A. § 15-19-51).  The

Supreme Court of Georgia has interpreted the "giving of any legal advice" as taking

action that requires the application of legal principles and judgment to achieve the

objectives of another.  *In re UPL Adv. Op. 2003-1*, 280 Ga. 121, 623 S.E.2d 464 (Ga.

2005).

   The Complaint identifies examples of Defendant's advertisements and articles that

state the consequences of bankruptcy filings for the benefit of potential debtors, discuss

the differences between chapters, and provide filing strategies, such as waiting until an anticipated tax refund is received and spent to file a bankruptcy petition.  Many courts have found that providing this information directly to a client constitutes offering legal advice within the meaning of § 110(e) and O.C.G.A. § 15-19-51.  *See* 11 U.S.C. § 110(e)(2)(B)(legal advice includes advising "whether to file a petition"; "whether . . . commencing a case under Chapter 7, 11, 12, or 13 is appropriate;" and "whether the debtor's debts will be discharged in a case"); *In re Sanchez*, 446 B.R. 531, 539 (Bankr. D.N.M. 2011) (holding that advising a debtor whether to file Chapter 7 or Chapter 13 "constitutes the offering of legal advice in violation of 11 U.S.C. § 110(e)(2)"); *Hutchinson*, 1991 WL 11762770, at *6; *Matter of Martin*, 40 B.R. 695, 696 (Bankr. N.D. Ga. 1984) (Norton, J.) (holding that BPP violated O.C.G.A. § 15-19-51 by making "certain explanations to the debtor of the bankruptcy laws").  Although the Court is inclined to agree with Defendant that the act of providing this information to the general public on a website may not be considered offering "legal advice," the fact that Defendant has made such statements in his advertisements and blog posts raises the inference that he has also made such statements to his clients directly.  At this point, considering Plaintiff has not engaged in discovery to obtain evidence of such direct statements to clients, Plaintiff is correct that summary judgment as to his § 110(e) count on the basis that Defendant has not offered legal advice to debtors or potential debtors would be

14

premature. *In re Darrow Auto. Grp., Inc.*, 2011 WL 1321504, at *4 (Bankr. S.D. Ga. Mar. 29, 2011) (noting that "'summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery'"). That being said, at the appropriate time, Plaintiff will be required to amend the complaint to provide additional facts to support his § 110(e) count, such that Defendant can have adequate notice of Plaintiff's allegations with regard to his offering legal advice to potential debtors.

B. Defendant is Not Entitled to Judgment as to the Unfair, Deceptive, or Fraudulent Conduct Count

Under § 110(j), upon Plaintiff's request, "if the court finds that--(i) a [BPP] has--(I) engaged in conduct in violation of [§ 110] or of any provision of [Title 11]; (II) misrepresented the preparer's experience or education as a [BBP]; or (III) engaged in any other fraudulent, unfair, or deceptive conduct; and (ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the [BPP] from engaging in such conduct." 11 U.S.C. § 110(j). Defendant has moved for summary judgment, in part, because he believes that the Complaint lacks any allegations that he has engaged in such conduct. In response, Plaintiff points to the factual allegations of the Complaint, which Defendant has conceded for purposes of the Motion, and asserts that these allegations support a finding that Defendant has made fraudulent, unfair, or deceptive statements that

15

give the impression to the public that he is an attorney or is able to render legal services.

For purposes of § 110(i), "unfair acts and deceptive practices include such conduct or omissions that are likely to mislead a reasonable consumer." *Finch v. Finch*, 2004 WL 2272152, at *14 (Bankr. M.D. Tenn. Oct. 6, 2004). Courts have often concluded that conduct that creates the impression that a BPP is an attorney or has the ability to offer legal advice is unfair and deceptive within the meaning of § 110(i). *See, e.g.*, *In re Gomez*, 259 B.R. 379, 387 (Bankr. D. Colo. 2001) (finding that advertising one's "training as a paralegal, implying that potential debtors will receive the benefit of legal expertise, knowledge and skill" and "using a patchwork of legal resources, reference to years of legal experience and a computer program, [to] embellish the illusion that prospective debtors receive the essential legal assistance necessary to obtain bankruptcy relief . . .makes the disclosure to [the debtor] that [the BPP] is not an attorney and cannot provide legal advice particularly deceptive and misleading" and a violation of § 110(i)); *In re Hennerman*, 351 B.R. 143, 153-155 (Bankr. D. Colo. 2006) (BPP's website content violated § 110(i) because it "deceive[d] the public and prospective clients into believing that the 'non-lawyer/non-attorney' advice and services offered through the Website will enable them to successfully navigate through the dangerous and complex labyrinth of bankruptcy law and procedures"; "[a]ny representations by a preparer suggesting that the preparer can shepherd a debtor through the Chapter 13 process is indubitably 'fraudulent,

16

unfair and deceptive"); *In re Moore*, 232 B.R. 1, 10-11 (Bankr. D. Me. 1999) ("Thus, the advertisements, [the BPP] fee structure, and his course of conduct combine to create a misleading impression that he brings to his clients some measure of lawfully salable bankruptcy expertise" and that "he will provide debtors . . . guidance and expert assistance, not just document preparation services.").

Here, Plaintiff has alleged that Defendant's website content creates the impression that Defendant offers more than just petition preparation services and that Defendant offers legal advice.  From simply reviewing the statements made, it appears to the Court that the statements do give the impression that using a BPP is just as good, if not better, than hiring an attorney.  Courts have had no difficulty concluding that creating such an impression is deceptive and unfair because of the profound risks that face debtors when they act without having received "proper counseling and guidance from trained professionals who are qualified and legally permitted to provide such services." *Hennerman*, 351 B.R. at 155.

Defendant has moved for summary judgment simply on his own opinion that no reasonable person would believe that Defendant is authorized to provide legal services. As Plaintiff notes, however, due to the procedural posture of this case, the Court has no evidence from which to make a determination as to that critical point, and the Court is unwilling to grant Defendant summary judgment as to Plaintiff's § 110(i) count without

17

permitting Plaintiff an opportunity to conduct discovery.

Further, "courts have uniformly held that the unauthorized practice of law constitutes a 'fraudulent, unfair, or deceptive' act." *In re Gross*, 2009 WL 2882828, at *8 (Bankr. E.D. Va. Aug. 28, 2009); *see also In re Medley*, 2005 WL 3093392, at *3 (Bankr. M.D.N.C. Nov. 10, 2005) ("A petition preparer who engages in the unauthorized practice of law commits an unfair or deceptive act pursuant to Section 110(i), and . . . the conduct may also subject the petition preparer to an injunction under Section 110(j) for engaging in 'fraudulent, unfair or deceptive conduct.'"); *Moore*, 232 B.R. at 8 (holding "without qualification that a [BPP]'s unlawful dispensation of legal advice constitutes a 'fraudulent, unfair, or deceptive act' within the meaning of § 110(i)(1)").  As noted above, Plaintiff should be given the opportunity to conduct discovery as to whether Defendant offered legal advice to potential debtors and whether such conduct could also form the basis for a violation of § 110(i).  For this reason, as with the § 110(e) count, summary judgment would be premature.

C.   The Constitutionality of 11 U.S.C. §§ 110(e) and (f) and O.C.G.A. § 15-19-50

Defendant argues that §§ 110(e) and 110(f) and O.C.G.A. § 15-19-50 constitute "an unconstitutional content based restriction on the Defendant's First Amendment right to free speech" and that these provisions are unconstitutional.  Defendant urges the Court to apply strict scrutiny to these statutory provisions and to require a showing that the

"restriction is narrowly tailored to advance a legitimate compelling government interest and is no more restrictive than necessary to further that interest."

First, § 110(e) essentially prohibits a BPP, a non-attorney, from practicing law without a license. A law that regulates who can practice a particular profession, a "license requirement [that] governs 'occupational conduct, and not a substantial amount of protected speech,' . . . does not implicate constitutionally protected activity under the First Amendment." *Locke v. Shore*, 634 F.3d 1185, 1191 (11th Cir. 2011) (quoting *Wilson v. State Bar of Ga.,* 132 F.3d 1422, 1430 (11th Cir. 1998)); *see also Accountant's Soc. of Virginia v. Bowman*, 860 F.2d 602, 605 (4th Cir. 1988); *Moore-King v. Cty. of Chesterfield, Va.*, 708 F.3d 560, 569 (4th Cir. 2013) ("[T]he government can license and regulate those who would provide services to their clients for compensation without running afoul of the First Amendment."). Such is the case with laws that govern admission to practice law and prohibit the unauthorized practice of law. *Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Castille*, 799 F.3d 216, 221 (3d Cir. 2015); *Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1386 (7th Cir. 1992) ("Any abridgment of the right to free speech is merely the incidental effect of observing an otherwise legitimate regulation."); *Capital Associated Indus., Inc. v. Stein*, 2017 WL 4162333, at *7 (M.D.N.C. Sept. 19, 2017) ("UPL Statutes operate as professional regulation that is not subject to First Amendment scrutiny if a speaker . . . . 'takes the affairs of a client

19

personally in hand and purports to exercise judgment on behalf of the client in the light of the client's individual needs and circumstances.'"); *People v. Shell*, 148 P.3d 162, 173 (Colo. 2006) ("The fact that our ban touches on the legal content of the advice offered or the pleadings drafted by an unlicensed person is of no constitutional significance, since 'it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'") (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S.Ct. 684, 93 L.Ed. 834 (1949)); *Monroe v. Horwitch*, 820 F. Supp. 682, 686 (D. Conn. 1993), *aff'd*, 19 F.3d 9 (2d Cir. 1994).

Therefore, § 110(e)'s prohibition of a non-attorney BPP's offering legal advice and O.C.G.A § 15-19-50, like other state unauthorized practice of law statutes, are not subject to First Amendment scrutiny because their main focus is regulation of professional conduct with only an incidental impact on speech. *See Hutchinson*, 1991 WL 11762764, at *5 (rejecting the argument that Georgia's unauthorized practice of law statute is an unconstitutional restriction on speech); *In re Douglas*, 304 B.R. 223, 239 (Bankr. D. Md. 2003) (upholding the constitutionality of § 110, as "defendants have no constitutional right under the First Amendment or otherwise to render legal advice without a license"); *Stein*, 2017 WL 4162333, at *7 (quoting *Moore–King*, 708 F.3d at 569) (A "'state's regulation of a profession raises no First Amendment problem where it amounts to

'generally applicable licensing provisions" affecting those who practice the profession.'"); *Shell*, 148 P.3d at 173 ("The fact that our ban touches on the legal content of the advice offered or the pleadings drafted by an unlicensed person is of no constitutional significance, since 'it has never been deemed an abridgement of freedom of speech or press to make a *course of conduct* illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'").

Second, § 110(f)'s proscription of the use of the word "legal" in any advertisement is a restriction on commercial speech that is not subject to strict scrutiny. As Plaintiff correctly notes, the First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech," U.S. Const. amend. I, and "[c]ontent-based laws— those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests," *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226, 192 L. Ed. 2d 236 (2015). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id*. at 2227; *see also Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1307 (11th Cir. 2017) (provisions of a state statute were "speaker-focused and content-based restrictions" on speech because they "apply only to the speech of doctors

and medical professionals, and only on the topic of firearm ownership").  Nonetheless, there are exceptions to the strict scrutiny applied to content-based restrictions on speech. "Content-based restrictions on certain categories of speech such as commercial . . . speech, though still protected under the First Amendment, are given more leeway because of the robustness of the speech and the greater need for regulatory flexibility in those areas."  *Dana's R.R. Supply v. Attorney Gen., Fla.*, 807 F.3d 1235, 1246 (11th Cir. 2015). Commercial speech is speech that "propose[s] a commercial transaction."  *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 473, 109 S. Ct. 3028, 3031, 106 L. Ed. 2d 388 (1989).

Restrictions on commercial speech are evaluated under the four-part test announced by the United States Supreme Court in *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Commission of New York*, 447 U.S. 557, 562–63, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).  *See Sorrell v. IMS Health Inc.,* 564 U.S. 552, 571–72, 131 S.Ct. 2653, 2667–68, 180 L. Ed. 2d 544 (2011) ("Under a commercial speech inquiry, it is the State's burden to justify its content-based law as consistent with the First Amendment," and "[t]o sustain the targeted, content-based burden [that a provision] imposes on protected expression, the State must show at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest.") (internal citations omitted); *RCP Publications Inc. v. City of Chicago,* 204 F. Supp. 3d 1012, 1018

22

(N.D. Ill. 2016) (concluding that "*Central Hudson* and its progeny continue to control the propriety of restrictions on commercial speech" following the Supreme Court's decision in *Reed v. Town of Gilbert*, __ U.S. __, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015)). *Central Hudson* established a four-part test for regulations curtailing commercial speech. Under this test,

> For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson Gas & Elec. Corp.,* 447 U.S. at 566.

Other courts have rejected the argument that § 110, to the extent that it prohibits advertisements that are fraudulent, unfair, or deceptive, is an impermissible infringement on commercial speech.  *In re Doser*, 412 F.3d 1056, 1063 (9th Cir. 2005); *see also Stein*, 2017 WL 4162333, at *11 ("Thus, CAI has no First Amendment right to advertise legal services since its right to provide such services is unlawful under the UPL Statutes.").  To the extent that § 110(f) prevents the use of the word "legal" in BPP advertisements because such use would render the advertisement unfair or deceptive, § 110(f) necessarily passes the *Central Hudson* test because intermediate scrutiny for commercial speech applies only to non-deceptive speech.  One could argue that the use of the word "legal" in

advertising by a non-lawyer BPP is self-evidently "deceptive" and, therefore, the Court need not receive an "elaborate evidentiary showing in order to establish the misleading nature of the regulated speech." *Accountant's Soc. of Virginia v. Bowman*, 860 F.2d 602, 605–06 (4th Cir. 1988) (citing *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 652-53, 105 S.Ct. 2265, 2282-83, 85 L.Ed.2d 652 (1985)) (holding that the state "constitutionally may prohibit non-CPAs from assuming the title 'public accountant'" and that the district court did not err in so "holding without evidentiary support"; "use of the title 'public accountant' by a non-CPA fairly could be characterized as inherently misleading, given the possibility . . . that 'some members of the public would believe the title . . . has the state's imprimatur'"); *N. Carolina State Bar v. Culbertson*, 177 N.C. App. 89, 94, 627 S.E.2d 644, 648 (2006) ("[A] statement is actually or inherently misleading when it deceives or *is inherently likely to deceive*.") (emphasis in original); ;*see also Green v. United States*, 1997 WL 16298, at *2 (N.D. Cal. Jan. 13, 1997) (upholding § 110(f) because the "First Amendment . . . has never been held to protect commercial speech that is inherently misleading or deceptive").

Even allowing for the possibility that use of the word "legal" by a non-attorney BPP in advertising is not inherently deceptive, given the substantial authority from other courts finding that § 110 meets the applicable *Central Hudson* test, granting summary judgment in Defendant's favor at this stage would not be appropriate. *See*, *e.g.*, *Doser*,

24

412 F.3d at 1064; *see also In re Kaitangian,* 218 B.R. 102, 107 (Bankr. S.D. Cal. 1998) (holding that use of the word "paralegal" in BPP's advertising "creates the misleading impression that the [BPP and its staff] are qualified to give legal advice, when in reality, they can lawfully provide none"); *In re Barcelo*, 313 B.R. 135, 147-48 (Bankr. E.D.N.Y. 2004) (holding that "Section 110 directly advances the government's interest in regulating BPPs, in the careful and accurate preparation of bankruptcy petitions and, more generally, the avoidance of fraud and deception on prospective debtors" and is "appropriately tailored to address the substantial government interest in regulating" BPPs); *In re Jamison*, 2015 WL 5626157, at *10 (Bankr. D.N.J. Sept. 18, 2015); *Bernales*, 345 B.R. at 226 (upholding the constitutionality of § 110(f)); *In re Delgado*, 2005 WL 758809, at *9 (Bankr. N.D. Iowa Apr. 1, 2005) ("No authority is presented which mandates First Amendment protection to the conduct scrutinized in this case.").  At the very least, Plaintiff must be given an opportunity to present evidence after conducting discovery to support his position that Congress's decision to prohibit BPPs from using the word "legal" in advertising advances a substantial governmental interest and that the measure is drawn to achieve that interest.  *See RCP Publications Inc.,* 204 F. Supp. 3d at 1019 ("Without a more developed record, the Court cannot determine whether there is a sufficient fit between the City's proffered interests and the restriction on speech that is at issue.").

25

## CONCLUSION

For the reasons stated above, Defendant is not entitled to summary judgment.  It is

**ORDERED** that the Motion for Summary Judgment is **DENIED.**

## END OF DOCUMENT

**Distribution List**

Charles M. Langevin, Jr.
Simplified Document Solutions
201 17th Street, NW
Suite 300
Atlanta, GA 30363

Daniel M. McDermott, United States Trustee
United States Trustee
362 Richard Russell Bldg Reg. 21
75 Ted Turner Drive, S.W.
Atlanta, GA 30303

R. Jeneane Treace
Office of the United States Trustee
362 Richard Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

26